FJN:NDB/ADW
F. #2018R00998/OCDETF#NY-NYE-839

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

ROHAN SUCKI, and
█████████

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and 846)

23-M-704

**TO BE FILED UNDER SEAL**

EASTERN DISTRICT OF NEW YORK, SS:

     ALVINUS CHARLES, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

     On or about and between July 18, 2023 and July 31, 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants, ROHAN SUCKI and █████████ together with others, did knowingly, intentionally and unlawfully conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1). The amount of cocaine involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was five kilograms or more of a substance containing cocaine.

     (Title 21, United States Code, Section 841(b)(1)(A)(ii)(II) and 846)

The source of your deponent's information and the grounds for his belief are as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been a DEA Special Agent for since November 2022. In my capacity as a DEA Special Agent, I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for federal narcotics offenses, narcotics trafficking into the United States, and money laundering offenses. I have participated in investigations involving arrest warrants, and the use of surveillance, confidential informants, cooperating defendants, and undercover operations. I have also received training to (a) review and analyze taped conversations and records of drug traffickers and money launderers and (b) debrief cooperating drug traffickers and money launderers. Through my training, education, and experience, I have also become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement, such as through the laundering of monetary instruments and the concealment of evidence of crimes.

2. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendants' criminal history records; and from reports of other law enforcement officers involved in the investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. On or about July 18, 2023, a confidential source ("CS-1"[1]), acting at the direction of law enforcement, conducted a recorded telephone call with defendant ▓▓▓▓ ▓▓▓▓ in which they discussed ▓▓▓▓ supplying narcotics to a buyer of CS-1's in New York City (the "New York Buyer"). ▓▓▓▓ asked CS-1 if the New York Buyer wanted "flower." Based on their prior relationship and interactions, CS-1 understood ▓▓▓▓ to ask if the New York Buyer wanted marijuana. CS-1 told ▓▓▓▓ that the New York Buyer wanted the "other one," by which CS-1 meant cocaine.

4. On or about July 19, 2023, CS-1, acting at the direction of law enforcement, conducted a recorded telephone call with ▓▓▓▓ in which ▓▓▓▓ told CS-1 to expect delivery of the cocaine in New York on July 24 or 25. With respect to pricing, ▓▓▓▓ told CS-1 that he (▓▓▓▓) was buying the cocaine for $20,000 per kilogram, and that CS-1 should work out the pricing with the New York Buyer so that both CS-1 and ▓▓▓▓ would profit. With respect to quantity, ▓▓▓▓ told CS-1 that he (▓▓▓▓) would supply CS-1 with five to 10 kilograms of cocaine for ultimate sale to the New York Buyer.

5. On or about July 20, 2023, CS-1, acting at the direction of law enforcement, conducted a recorded telephone call with ▓▓▓▓ in which CS-1 confirmed that the New York Buyer was interested in the proposed transaction. ▓▓▓▓ said that he would provide CS-1 with 10 kilograms to be sold to the New York Buyer and to expect delivery on July 27 or 28, 2023.

---

[1] In January 2023, CS-1 was arrested and charged by complaint with money laundering conspiracy, in violation of 18 United States Code, Section 1956. Information CS-1 has provided has proven reliable and been corroborated by independent evidence. CS-1 is cooperating with law enforcement authorities with the hope of pleading guilty pursuant to a cooperation agreement and receiving leniency at sentencing.

6.      On or about July 24, 2023, CS-1, acting at the direction of law enforcement, conducted a recorded telephone call with ▮▮▮▮ in which CS-1 requested a sample of cocaine before ▮▮▮▮ supplied the previously discussed 10 kilograms.  ▮▮▮▮ told CS-1 that the New York Buyer should take one kilogram and that the New York Buyer could come back for the other nine kilograms if s/he was pleased with the quality of the cocaine.   After further discussion, ▮▮▮▮ told CS-1 that the New York Buyer should take all 10 kilograms, and CS-1 could subsequently take care of paying ▮▮▮▮▮▮ also stated that he had 50 kilograms of cocaine available locally in New York.

7.      On or about July 27, 2023, CS-1, acting at the direction of law enforcement, conducted a recorded telephone call with ▮▮▮▮ in which ▮▮▮▮ provided CS-1 with the telephone number for a local co-conspirator who would coordinate the delivery of the cocaine.   CS-1 provided that number to a confidential source ("CS-2"[2]), posing as CS-1's New York buyer.   Acting at the direction of law enforcement, CS-2 called the number that ▮▮▮▮ had provided to CS-1 to coordinate and arrange for delivery in New York of the agreed-upon 10 kilograms of cocaine.   That call was audio recorded.   Based on familiarity with ▮▮▮▮ voice learned during the course of the investigation, law enforcement determined that ▮▮▮▮ had, in fact, provided a second telephone number for himself to CS-1, which CS-1 then provided to CS-2.   Thus, when CS-2 called the number provided, he was communicating directly with ▮▮▮▮ himself, posing as a co-conspirator.

---

[2]     In June 2018, CS-2 pled guilty pursuant to a cooperation agreement to conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine, in violation of 21 United States Code, Section 846.   Information CS-2 has provided has proven reliable and been corroborated by independent evidence.   CS-2 is cooperating with law enforcement authorities with the hope of receiving leniency at sentencing.

8. From on or about July 27, 2023 through July 30, 2023, CS-2, acting at the direction of law enforcement, conducted recorded telephone calls and exchanged text messages with ▮▮▮▮ in which they discussed the delivery of 10 kilograms of cocaine in New York.

9. On or about July 30, 2023, ▮▮▮▮ provided CS-2 with the telephone number of a co-conspirator (the "Unknown Co-Conspirator") who would coordinate the delivery of the cocaine to CS-2. ▮▮▮▮ also instructed CS-2 to download the encrypted messaging app "Signal."

10. On or about July 31, 2023, CS-2, acting at the direction of law enforcement, exchanged text communications via Signal with the Unknown Co-Conspirator in which they discussed and agreed upon a location for delivery of the cocaine. Ultimately, the Unknown Co-Conspirator and CS-2 agreed that the cocaine would be delivered to CS-2 in Brooklyn. The Unknown Co-Conspirator also told CS-2 that he (the Unknown Co-Conspirator) had another delivery to make, which CS-2 understood to mean another cocaine delivery. After agreeing on a location in Brooklyn for the delivery, Unknown Co-Conspirator texted CS-2 that he was bringing CS-2 17 kilograms of cocaine instead of 10 kilograms. In response, CS-2 reported that he was only supposed to receive 10 kilograms. ▮▮▮▮ then called and texted with CS-2 and told CS-2 that Unknown Co-Conspirator had either 17 or 20 kilograms for him, and that he should take it. CS-2 then confirmed with Unknown Co-Conspirator that he would take the larger quantity.

11. At approximately 7:15 p.m. on July 31, 2023, the Unknown Co-Conspirator texted CS-2 saying that an associate would be at the agreed-upon meeting location shortly, and that the associate was driving a red Nissan Rogue. Shortly thereafter, a car matching that description pulled into the parking lot in Brooklyn where the Unknown Co-

Conspirator had agreed to meet CS-2. The driver of the vehicle—later identified as defendant ROHAN SUCKI—parked the vehicle and approached CS-2 in his vehicle, which was parked nearby. SUCKI told CS-2 to pull his car up to SUCKI's, so the rears of the vehicles faced each other, so they could make the transfer of drugs fast. As instructed, CS-2 moved his vehicle so it was back-to-back with the vehicle driven by SUCKI. CS-2 exited his vehicle and approached the vehicle driven by SUCKI, and SUCKI instructed CS-2 to take the three shopping bags from the back. As CS-2 did so, he observed two black plastic garbage bags in the back of the vehicle. Based on the Unknown Co-Conspirator's earlier communications with CS-2 and CS-2's observations of the items in the rear of SUCKI's vehicle, CS-2 believed that more cocaine was in the garbage bags.

12. After CS-2 placed the three shopping bags from SUCKI's vehicle into his own vehicle, law enforcement took possession of the bags, which contained 17 brick-shaped, individually wrapped packages. Agents conducted a field-test of the substance, which tested positive for cocaine.

13. At approximately 8:00 p.m. on July 31, 2023, after having observed SUCKI drive away, law enforcement conducted a traffic stop of SUCKI's vehicle. Upon stopping the vehicle, an individual in the front passenger seat gave oral consent for law enforcement to search the vehicle, which the passenger stated belonged to his girlfriend. Law enforcement discovered and seized what appeared to be another 20 brick-shaped, individually wrapped packages, concealed in two black plastic garbage bags. Law enforcement arrested SUCKI at that time. Law enforcement detained the passenger but later released him.

14. At approximately 9:50 p.m., ▬▬▬ asked CS-2 for confirmation that the transaction had occurred. CS-2 confirmed to ▬▬▬ that he had received everything and stated

that he would need a few additional days to make payment because he had received 17 kilograms instead of the 10 kilograms of cocaine that he had expected. ▮ said that when CS-2 had the money ready, CS-2 should provide it to "our friend," who CS-2 understood referred to CS-1.

## SEALING REQUEST

IT IS FURTHER REQUESTED that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including this affidavit and the requested arrest warrant for ▮.[3]  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits via the Internet and disseminate them to other criminals as they deem appropriate, e.g., by posting them publicly through online forums.   Therefore, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving targets an opportunity to flee from prosecution, destroy or tamper with evidence, change patterns of behavior, and notify confederates.

---

[3]  ▮ has not yet been apprehended.   The government therefor moves to have all related papers and docket entries sealed.   It will move to unseal a redacted version of the complaint.

WHEREFORE, your deponent respectfully requests that an arrest warrant for defendant ███████ be issued so that he may be dealt with according to law.

WHEREFORE, your deponent respectfully requests that the defendant ROHAN SUCKI be dealt with according to law.

**ALVINUS CHARLES**  Digitally signed by ALVINUS CHARLES
Date: 2023.08.01 12:59:15 -04'00'

ALVINUS CHARLES
Special Agent
Drug Enforcement Administration

Sworn to before me this
__1st__ day of August, 2023

S/ Vera Scanlon

THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK